| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>Greenbaum, Rowe, Smith & Davis LLP<br>Metro Corporate Campus One<br>P.O. Box 5600<br>Woodbridge, New Jersey 07095<br>(732) 549-5600<br>Proposed Attorneys for the Debtor<br>David L. Bruck, Esq. | |
| In re:<br><br>**S.A.M. GRAPHICS, INC.,**<br><br>Debtor. | Chapter 11 Proceeding<br><br>Case No.: 11-17642 |

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C. §§ 105, 361, 362 AND 363 (I) APPROVING THE USE OF CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION; AND (III) SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

S.A.M. Graphics, Inc., a New Jersey Corporation, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), by and through its proposed undersigned counsel, submits this motion (the "Motion") for entry of an Order (i) approving the use of cash collateral, (ii) providing adequate protection, and (iii) setting a final hearing pursuant to bankruptcy rule 4001. In support of this Motion, the Debtor represents as follows:

### JURISDICTION

1.  This Motion is submitted in support of the Debtor's request for an Interim Order: (i) Authorizing the Use of Pre-petition Lenders' Cash Collateral under 11 U.S.C. §363, (ii) Granting Adequate Protection Under 11 U.S.C. §§361, 362 and 363, and (iii) Setting A Final Hearing Pursuant To Bankruptcy Rule 4001(b).

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

### CONCISE STATEMENT OF RELIEF REQUESTED PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)

3. Pursuant to the Motion, the Debtor requests authority to use the Cash Collateral (as defined below) which is subject to several first priority liens of TD Bank ("TD Bank"), and a second priority lien held by Banco Popular North America ("Banco Popular"). Jesse R. Pike Associates, Inc. ("JRP") also filed a UCC financing statement against the Debtor; however, the claim of JRP is disputed and there is no collateral value to support its claim. JRP is included herein for notice purposes. No adequate protection is proposed except the granting of a replacement lien, reserving all rights. See Klepner Certification. Without the use of the Cash Collateral, the Debtor will be unable to pay its ordinary and necessary business expenses including, but not limited to, payroll and related obligations, taxes, utilities, rents, suppliers of insurance and costs of administration of this case. As a result, the Debtor's operations would cease, thereby resulting in the loss of jobs for the Debtor's twenty-five employees and causing the Debtor's estate to suffer immediate and irreparable harm.

4. To preserve the Debtor's business and assets for the benefit of its creditors and estate and to enable the Debtor to pursue its efforts towards a plan of reorganization, the Court should authorize the use of the Cash Collateral in accordance with the Interim Order and the budget attached hereto as **EXHIBIT A** (the "Budget"). Thereafter, following a hearing to be scheduled by the Court, the Court should grant final approval of the Debtor's use of the Cash Collateral.

1284432.01

5. As described in greater detail herein, the Debtor proposes to provide TD Bank and Banco Popular with adequate protection in exchange for the Debtor's use of the Cash Collateral by virtue of (i) granting replacement liens to TD Bank and Banco Popular on all the Debtor's present and after-acquired property, in accordance with the priority which they presently have on Debtor's prepetition assets, (ii) the Debtor making monthly post-petition cash payments equal to the interest due to TD Bank at the non-default rate (the approximate sum of $23,000 per month), and to Banco Popular $7,500 per month (iii) granting super-priority administrative claims under 11 U.S.C. §507(b) to TD Bank and Banco Popular in the priority as previously set forth, and (iv) providing certain reporting to TD Bank and Banco Popular. As to JRP, Debtor, without prejudice, proposes granting a replacement lien subordinate to the liens granted to TD Bank and Banco Popular.

## BACKGROUND

6. The Debtor filed for voluntary Chapter 11 relief on March 15, 2011 (the "Petition Date") in the United States Bankruptcy Court for the District of New Jersey, Trenton Vicinage.

7. The Debtor continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§1107(a) and 1108. No trustee, examiner or creditors' committee has been appointed in this Chapter 11 case.

8. The Debtor operates a school marketing and school fundraising business in Marlboro, New Jersey, located at 35 Vanderburgh Road, Marlboro, New Jersey. The Debtor provides various product to schools throughout the United States.

9. The Debtor employs approximately twenty-five (25) full and part-time people at its business with an average weekly payroll of almost $30,000 including production, clerical, administrative and sales personnel. In addition, the Debtor markets its products through at least twenty (20) sales representatives who are paid by commission.

10. The Debtor owes TD Bank approximately $2.2 million pursuant to a series of pre-petition credit facilities between S.A.M. Graphics, Inc. and TD Bank, and TD Bank asserts its claims as secured, in part, by a first priority lien on all of the Debtor's assets and, in part, on specific pieces of equipment. The Debtor owes Banco Popular approximately $1,400,000 pursuant to a loan transaction by a debtor affiliate of the Debtor, Fundraising Solutions, Inc., which loan is guaranteed and collateralized by the Debtor. Banco Popular's security interest upon Debtor's assets is subordinate to the security interest of TD Bank but is a prior lien on the assets of Fundraising Solutions, Inc. The debt to JRP arose out of the purchase by Fundraising Solutions of the assets of JRP in 2008 in a transaction in which JRP defrauded the Debtor, which fraud has led to this bankruptcy.

11. The Debtor's primary assets subject to the lien claims of TD Bank and Banco Popular consists of cash on hand, account receivables, furniture, fixtures, machinery, equipment, and inventory with an approximate going concern value of $3.7 million. The Debtor has approximately $120,000 in its bank accounts. FS has less than $1,000 and FS2 has approximately $75,000 as of March 10, 2011. In addition to the liens on these assets, TD Bank also holds a first priority lien on the real estate owned by S.A.M. Realty, LLC, where Debtor operates its business and a lien on Robert Klepner's

4

residence in Marlboro, New Jersey. Banco Popular holds a mortgage on the real estate owned by S.A.M. Realty, LLC, subordinate to TD Bank's mortgage. S.A.M. Realty, LLC is not presently a debtor in these proceedings.

12. In addition to the secured debts of TD Bank and Banco Popular, respectively, the Debtor owes approximately $2.5 million in unsecured debt, excluding potential deficiency claims.

13. The downturn in the overall economy and the purchase by the Debtor and its affiliate Fundraising Solutions, Inc., of a school fundraising business in 2008 had a particularly negative effect on the Debtor's business. Although the Debtor has attempted to restructure its debt outside the bankruptcy process, the worsening economy coupled with the sabotaged school fundraising business has led to the Debtor seeking bankruptcy relief. See Klepner Certification in Support of First Day Motions.

14. The Debtor intends to utilize the chapter 11 process to restructure its liabilities. By maintaining operations, the Debtor can preserve its going concern value while keeping the employees working, servicing its customers and addressing the pre-petition obligations through negotiation and filing of a plan and disclosure statement.

## **THE CASH COLLATERAL**

15. Without the emergent use of cash collateral, specifically in the form of the continued sale of inventory and the collection of accounts receivables, the Debtor will be unable to pay salaries, rent, utilities, suppliers and other operating expenses incurred in the ordinary course of business. Absent the authority to use the

5

1284432.01

Cash Collateral, the Debtor's ability to preserve and maximize the value of its assets will be irreparably harmed. Accordingly the Debtor hereby seeks the entry of an interim order, and subsequently a final order, authorizing the use of Cash Collateral.

16. Through the use of Cash Collateral, the Debtor will be able to maintain its operations as a going concern post-petition while protecting and preserving its assets. In order to adequately protect TD Bank and Banco Popular, the Debtor proposes to grant TD Bank and Banco Popular replacement liens on all of the Debtor's post-petition assets to the extent of any diminution of value of its collateral as of the Petition Date, coupled with adequate protection payments and certain monthly reporting. The Debtor proposes a replacement lien to adequate protect JRP, reserving all rights.

17. The Debtor respectfully submits that the replacement liens, monthly payments and post-petition reporting more than adequately protects TD Bank and Banco Popular within the meaning of 11 U.S.C. §361, and certainly, the granting of a replacement lien to JRP is more than it deserves. Debtor's claim against JRP far exceeds whatever claim it may have against the Debtor. Consequently, Debtor maintains that it should be authorized to use the Cash Collateral in accordance with the Budget. Accordingly, it is respectfully submitted that the Court should authorize the Debtor's use of the Cash Collateral pursuant to 11 U.S.C. §363.

### RELIEF REQUESTED

18. By this Motion, the Debtor respectfully requests that the Court enter an order pursuant to 11 U.S.C. §§105, 361, 362 and 363 and Federal Rule of Bankruptcy Procedure 4001:

1284432.01

a) approving, on an emergency basis, entry of the Interim Order authorizing the Debtor to use the Cash Collateral in accordance with the form of Interim Order submitted herewith;

b) approving the manner of service of notice of this Motion;

c) scheduling a Final Hearing on this Motion no sooner than fifteen (15) days after the service of the Motion pursuant to Bankruptcy Rule 4001(b); and

d) granting such other and further relief to the Debtor as the Court deems appropriate.

19. Pursuant to 11 U.S.C. §363(c), a debtor-in-possession may not use Cash Collateral without the consent of the secured party or Court approval.

20. 11 U.S.C. §363(e) provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use ... as is necessary to provide adequate protection of such interest." What constitutes adequate protection is determined on a case-by-case basis. See In re Swedeland Development Group, Inc., 16 F.3d 552, 564 (3' Cit. 1994); In re O'Connor, 808 F.2d 1393, 1396-97 (10' Cir. 1987). Adequate protection can be provided in a number of ways under 11 U.S.C. §361, with the focus being to protect a secured creditor from any diminution in the value of its interest in the collateral during the period of its use post-petition. See Swedeland, 16 F.3d at 565-64; In re Gallegos Research Group Corp., 193 BR 577, 584 (Bankr.D.Colo. 1995); see also In re Cann & Saul Steel Co., 76 B.R. 479 (Bankr.E.D.Pa. 1987), In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr.D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy."); In re Blehm

7

Land & Cattle Co., 859 F.2d 137, 139 (10ª` Cir. 1988) (§361 sets forth nonexclusive methods of providing adequate protection); In re Hinchliffe, 164 B.R. 45. 49 (Bankr.E.D.Pa. 1994) ("[I]n the proper case, a debtor could rely upon his arguably high prospect for a successful reorganization to support his claim that adequate protection exists."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." Swedeland, 16 F.3d at 564.

21.    Although the term "adequate protection" is not defined in the Bankruptcy Code, § 361 sets forth three non-exclusive methods of how an interest in property may be adequately protected. Id.    In re Shrive, 33 B.R. 176, 181 (Bankr.N.D.Ohio 1983). Among those methods, a debtor may make a cash or periodic payment or provide the creditor with a replacement lien. The creditor is only entitled to protection of its collateral value supporting its claim; it is not entitled to adequate protection for its lost opportunity costs. Gallegos, 193 B.R. at 584-85, citing United States Savings Association of Texas v Timbers of In U.S. 365 (1988); Cann & Saul Steel, 76 B.R. at 483.

22.    As set forth herein, the Debtor proposes to provide (a) TD Bank with adequate protection in the form of (i) a replacement lien; (ii) $23,000 in monthly post-petition cash payments equal to the interest due to TD Bank in accordance with the pre-default interest rate; (iii) granting a super-priority administrative claim under 11 U.S.C. §507(b); and (iv) providing certain reporting to TD Bank; (b) Banco Popular with adequate protection in the form of (i) a subordinate replacement lien; (ii) $7,500

1284432.01

in monthly post-petition cash payments; (iii) granting a subordinate super-priority administrative claim under 11 U.S.C. §507(b); and (iv) providing certain reporting. The Debtor proposes to provide a replacement lien to JRP to the extent of the value of its collateral, if any, without prejudice to its claim against JRP, all rights being reserved.

23. Through the use of the Cash Collateral, the Debtor will be able to maintain the value associated with its assets for the benefit of the estate as well as TD Bank and Banco Popular. Moreover, the use of Cash Collateral will prevent the abrupt discontinuation of the Debtor's operations and the termination of its employees.

24. The Debtor respectfully submits that the protection proposed herein is appropriate to adequately protect TD Bank, Banco Popular and JRP, respectively, and their claimed security interests. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to use cash collateral pursuant to the terms proposed herein.

25. For all of the foregoing reasons, absent the immediate entry of the proposed interim order the Debtor will be unable to conduct its business. Thus, the Debtor respectfully submits that cause exists for entry of the proposed interim order permitting Debtor to immediately use the Cash Collateral and to excuse compliance with the ten day stay embodied in Bankruptcy Rule 6004(h) to the extent it applies.

## CARVE OUT FOR PROFESSIONALS

26. The Debtor proposes that TD Bank and Banco Popular agree and consent to a carve out from their post-petition claims and super priority claims of $100,000 for

1284432.01

the benefit of professionals retained in this case. Debtor proposes that TD carve out $75,000 and that Banco carve out $25,000.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

27. Given the Debtor's financial situation, the timing of its Chapter 11 petition, and the Debtor's immediate need for use of Cash Collateral, an expedited hearing as contemplated by Bankruptcy Rule 4001(b) is warranted. The Debtor will provide notice of this Motion and the proposed interim order via overnight mail or email (to the extent practicable) to the United States Trustee; the Debtor's twenty (20) largest unsecured creditors and TD Bank, Banco Popular and JRP. Given the circumstances, the Debtor respectfully submits that such notice is sufficient and appropriate to schedule an emergent hearing for the Debtor to seek entry of the proposed interim order.

## NOTICE WITH RESPECT TO THE FINAL HEARING

28. Pursuant to Bankruptcy Rule 4001(b), the Debtor respectfully requests that it be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than fifteen (15) days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with the signed interim order, on (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors; and (iii) all Secured Creditors. Such notice shall constitute sufficient notice of the final hearing pursuant to Bankruptcy Rules 2002 and 4001(b).

## PRIOR REQUEST AND WAIVER OF BRIEF

29. No prior request for the relief sought herein has been made to this or to any other court.

1284432.01

30. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement for filing a brief under D.N.J. LBR 9013-2 be waived.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted herewith, granting the Motion and such other and further relief as the Court deems appropriate.

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Proposed Attorneys for S.A.M. Graphics, Inc.

By: _____
David L. Bruck

**Dated: March 15, 2011**

# EXHIBIT A

# S.A.M. GRAPHICS, INC. and AFFILIATES

## BUDGET FOR APRIL 2011

### *Internally Prepared/Unaudited*

|  | Combined | S.A.M. Graphics | Fundraising Solutions | Fundraising Solutions 2 |
|---|---|---|---|---|
| Revenue | $ 511,510.00 | $ 459,350.00 | $ 52,160.00 |  |
| Cost of Goods Sold | 309,093.00 | 271,017.00 | 38,077.00 |  |
| Gross Profit | $ 202,417.00 | $ 188,334.00 | $ 14,083.00 |  |
|  |  |  |  |  |
| **Operating Expenses:** |  |  |  |  |
|  |  |  |  |  |
| Advertising | $ 1,000.00 | $ 1,000.00 |  |  |
| Auto Expenses | 1,575.00 | 1,575.00 |  |  |
| Bank and Credit Card Fees | 5,426.00 | 5,426.00 |  |  |
| Dues and Subscriptions | 500.00 | 500.00 |  |  |
| Insurance | 3,500.00 | 3,500.00 |  |  |
| Adequate Protection Payments[1] | 30,500.00 | 30,500.00 |  |  |
| Marketing and Shows | 2,500.00 | 2,500.00 |  |  |
| Office Expenses | 2,000.00 | 2,000.00 |  |  |
| Payroll Fees | 1,500.00 | 1,500.00 |  |  |
| Postage | 1,350.00 | 1,350.00 |  |  |
| Professional Fees | 10,000.00 | 10,000.00 |  |  |
| Rent | 13,000.00 | 13,000.00 |  |  |
| Payroll, includes taxes/benefits | 101,994.00 | 84,903.00 | 17,091.00 |  |
| Telephone | 1,500.00 | 1,500.00 |  |  |
| Utilities | 3,500.00 | 3,500.00 |  |  |
|  | $ 179,845.00 | $ 162,754.00 | $ 17,091.00 |  |
|  |  |  |  |  |
| Net: | $ 22,572.00 | $ 25,580.00 | ($3,008.00) |  |

Note: *Fundraising Solutions includes Fundraising Solutions 2*

---

[1] TD Bank $23,000 and Banco Popular $7,500.

# S.A.M. GRAPHICS, INC. and AFFILIATES

# BUDGET FOR MAY 2011

## *Internally Prepared/Unaudited*

|  | Combined | S.A.M. Graphics | Fundraising Solutions | Fundraising Solutions 2 |
|---|---|---|---|---|
| Revenue | $ 503,482.00 | $ 475,400.00 | $ 28,083.00 | |
| Cost of Goods Sold | 298,609.00 | 278,109.00 | 20,500.00 | |
| Gross Profit | $ 204,873.00 | $ 197,291.00 | $ 7,582.00 | |
| **Operating Expenses:** | | | | |
| Advertising | $ 1,000.00 | $ 1,000.00 | | |
| Auto Expenses | 1,575.00 | 1,575.00 | | |
| Bank and Credit Card Fees | 5,616.00 | 5,616.00 | | |
| Dues and Subscriptions | 500.00 | 500.00 | | |
| Insurance | 3,500.00 | 3,500.00 | | |
| Adequate Protection Payments[1] | 30,500.00 | 30,500.00 | | |
| Marketing and Shows | 2,500.00 | 2,500.00 | | |
| Office Expenses | 2,000.00 | 2,000.00 | | |
| Payroll Fees | 1,500.00 | 1,500.00 | | |
| Postage | 1,350.00 | 1,350.00 | | |
| Professional Fees | 10,000.00 | 10,000.00 | | |
| Rent | 6,600.00 | 6,600.00 | | |
| Payroll, includes taxes/benefits | 101,994.00 | 84,903.00 | 17,091.00 | |
| Telephone | 1,500.00 | 1,500.00 | | |
| Utilities | 3,500.00 | 3,500.00 | | |
| Fitup Expense | 10,000.00 | 10,000.00 | | |
|  | $183,635.00 | $166,544.00 | $ 17,091.00 | |
| Net: | $ 21,238.00 | $ 30,747.00 | ($9,509.00) | |

Note: *Fundraising Solutions includes Fundraising Solutions 2*

---

[1] TD Bank $23,000 and Banco Popular $7,500.

# S.A.M. GRAPHICS, INC. and AFFILIATES

# BUDGET FOR JUNE 2011

## *Internally Prepared/Unaudited*

|  | Combined | S.A.M. Graphics | Fundraising Solutions | Fundraising Solutions 2 |
|---|---|---|---|---|
| Revenue | $ 409,601.00 | $ 398,650.00 | $ 10,951.00 |  |
| Cost of Goods Sold | 239,211.00 | 231,217.00 | 7,994.00 |  |
| Gross Profit | $ 170,390.00 | $ 167,433.00 | $ 2,957.00 |  |
|  |  |  |  |  |
| **Operating Expenses:** |  |  |  |  |
|  |  |  |  |  |
| Advertising | $ 1,000.00 | $ 1,000.00 |  |  |
| Auto Expenses | 1,575.00 | 1,575.00 |  |  |
| Bank and Credit Card Fees | 5,337.00 | 5,337.00 |  |  |
| Dues and Subscriptions | 500.00 | 500.00 |  |  |
| Insurance | 3,500.00 | 3,500.00 |  |  |
| Adequate Protection Payments[1] | 30,500.00 | 30,500.00 |  |  |
| Marketing and Shows | 2,500.00 | 2,500.00 |  |  |
| Office Expenses | 2,000.00 | 2,000.00 |  |  |
| Payroll Fees | 1,500.00 | 1,500.00 |  |  |
| Postage | 1,350.00 | 1,350.00 |  |  |
| Professional Fees | 10,000.00 | 10,000.00 |  |  |
| Rent | 6,600.00 | 6,600.00 |  |  |
| Payroll, includes taxes/benefits | 95,119.00 | 82,803.00 | 12,316.00 |  |
| Telephone | 1,500.00 | 1,500.00 |  |  |
| Utilities | 3,500.00 | 3,500.00 |  |  |
| Fitup Expense | 10,000.00 | 10,000.00 |  |  |
|  | $176,481.00 | $164,165.00 | $ 12,316.00 |  |
|  |  |  |  |  |
| Net: | ($6,091.00) | $ 3,268.00 | ($9,359.00) |  |

*Note: Fundraising Solutions includes Fundraising Solutions 2*

---

[1] TD Bank $23,000 and Banco Popular $7,500.